Thank you, Your Honor. Bill Sullivan for the appellants. As much as I think it's undisputed, Your Honors, there's going to be two primary issues here. I would like to briefly address what I consider a third issue, and that is the District Court's selective editing of over $800 of Mr. Corbin's work time. We believe that's something that makes this case unique. We'd submit, I think Time Warner would not dispute this, that the rounding and the de minimis is something that's crucial to these wage and hour actions and should be decided, we argue, in line with Gillings. But one thing that's unique to this case, Your Honors, is the District Court just sweeping away, again, over $800 of compensation. We believe that the reasoning was wrong and by itself requires that this motion for summary judgment should have been denied. The reason the court stated that it was selectively editing or removing it from consideration was that it was deemed to be unreliable. Now, it is undisputed here that the employees, the plaintiffs, are all California employees. As such, Time Warner is beholden and responsible to the IWC wage orders that require accurate time records. We argued that the court cannot state that, well, simply because we're going off of a clock, a wall clock, as opposed to computer records, which is what occurred later on. The court can sui sponte, just edit this time. Excuse me, counsel, I'm maybe a little lost. Is this case about the wall clock or the computer program? This case is about, we see it as, plaintiff's issue is a primary right theory, a loss of overtime compensation and compensation in general. But are you, I'm confused, are you attacking the wall clock computations also? No, sir, your honor. But what we're actually, okay, that's what I thought. I'm sorry, yes, what we're arguing is the court sui sponte. Neither party raised this. The court just said as much as there's Mr. Corbin and only Mr. Corbin claims over $800 in compensation, the court sui sponte is going to remove $800 because during that time period, Time Warner required its employees to clock in and out with the catalyst being a wall clock. This has nothing to do with the requirement to keep accurate time records. And so is that, I'm sorry, I guess I'm really confused. Is that an issue in this case or is that just an atmospheric? It's mentioned in the, it's mentioned in our briefs because I believe that's what makes this case unique. Mentioned, mentioned, mentioned, but how did you, how did you make it an issue? It was one of the questions for review and it's one of the issues that we believe is patent error, your honor. The court cannot sui sponte. Maybe going back to the rules of summary judgment, if you, we want to start there and I apologize. The court cannot sui sponte, just decide I'm going to rule a certain way. The court is presented with certain facts here as initiated by Time Warner. Time Warner never brought this issue up, never argued that our time records are inaccurate. It would, it would harm them if they did. This was something that came up at the court's initiation and it was wrong. And were you, were you there when the court did that? Yes, sir. Your honor. And what did you say to the court when the court said that? We said we believe it's absolutely wrong. There's no reference, there's no record for that. Before I forget, and I apologize to your honor, I'd like to reserve five minutes for rebuttal. Keep your eye on the clock, counsel. Our questions may lead you astray. Well, I've done this before. I should have, I should have brought it up. Well, counsel, are we talking about the rounding claim here? I'm not, I guess I'm with Judge Trott. I'm not quite sure where you're going with this. That would apply to the rounding claim, your honor. But when we're talking about what I think in the papers is deemed to be primary claims, it would be rounding and the de minimis. The, this unique characteristic of this case would just apply to the rounding. But when you're talking about rounding, there was still error, even regardless of this, this selective editing by the court, because it's undisputed. I'm sorry, your honor? Well, you don't disagree that rounding on a neutral basis is permitted under both California law and the Fair Labor Standards Act? No, your honor, we disagree. First of all, we, the test is actually neutral in design and application. We argued here that the main error here was not, as the district court did, deciding whether it's neutral as opposed to the minutes worked. The plain language of the statute requires it to be neutral as to the money, as to the compensation. So when the court is saying, well, there were some minutes lost here, they disregarded the plain language of the rounding statute. Doesn't that balance out if you follow the same rounding procedure across, let's say, a full month? You win a few, lose a few, but in the end you can't even, no? You don't, your honor. And that's what's undisputed here, and that's why in this case, this is a summary judgment, not a class certification. In this case, it's undisputed that both plaintiffs lost money over the design. Does the Department of Labor regulation contemplate that it will even out with respect to each individual employee, or does it contemplate that the rule over the course of lots of employees over an industry or an employer will even out because it's a neutral rule? Two answers if I may, your honor. The Department of Labor, or the plain language of the statute, uses the term employees. When it's been applied, and this is maybe the second part of my answer, when given the the pleadings, you're taking it into account with the California Labor Code as well. Overtime is unwaivable. It has to be per the employees. It has to be per employee? Per each employee, your honor. And the flaw in the design when applying that any Department of Labor or federal regulation to the California Labor Code is the difference between California and the Fed, so the most important difference here, and that's the eight-hour overtime. The most proper hypothetical, or the most often used... Because from an employer standpoint, if you have two employees, one who comes consistently comes in five minutes late, and one who always clocks in five minutes early, this is a neutral rule. The employer comes out even overtime. Now one of these is cheating his employer, and the others the others conferred a benefit on his employer. Not necessarily cheating the employer, your honor, where you've got... In an amount of five minutes every day. Well, here's the thing, your honor. If you take it with no other facts, but what we've got here is a requirement from employers, which is entirely proper, don't show up late. If you show up late, you're gonna be written up. They are aware, as your honor is, that there's these people out there that may try to cheat. But when you apply this, not only to the Feds, but to the California Labor Code, it's simple math. And the flaw in the design, if I may very quickly, is where you have this eight-hour rule, Time Warner has argued, and will probably argue in the next couple minutes, that impacting that eight-hour day... Say, your honor, somebody sneaks out right before they work seven hours and 55 minutes, or say 56 minutes, at $12 an hour. I'm sorry to get too convoluted, but that works out to basically 20 cents a minute. If you credit them with four hours of regular time, they've gained 80 cents. But if they work as the rules state, or as the environment dictates, they work a little bit late, say eight hours and four minutes, that goes back to eight hours, and they lose four minutes at a higher rate. That's the flaw in the design. Most importantly, and very quickly, because I want to reserve, if it's okay with your honor, this is Gillings, exactly. This is a separate legal entity, but it's Gillings. Maybe we were wrong in Gillings. You weren't, your honor, because what you're doing in Gillings, and I just remind the court, I know it's of no dispossivity, but... It's not presidential. Yeah, it's not presidential, and it went up for rehearing. And it was denied by everyone, unanimously. There's no rehearing, because it's basically common sense. But very quickly, if I could, the plain language of the rounding statute requires no loss of compensation. Here it's undisputed there's a loss of compensation. With respect to the de minimis doctrine, Lindau requires that the de minimis doctrine can only be applied, one, as an affirmative defense, which is, it's undisputed, it does not apply here, and two... What I hear you saying is that the whole rounding process is defective, period. No, your honor, it can be applied. It is applied with great success in the state. Starbucks, for example, has stated, I believe on the record, I know they've stated that one of the reasons they prefer rounding... On this record, Starbucks has stated? No, sir, your honor. It's just... Well, I really don't care what Starbucks has said, then. Okay, with respect to... Are you familiar with the See's Candy case? Yes, your honor, I was the plaintiff's counsel on that case. Didn't you try this argument in that case, and didn't the California court tell you you're wrong? No, they told us we were right, your honor. If you look to the sites, we say we agree, and here's my point, we agree that applying the rounding to the California Labor Code, the 8-hour day, means there may be a loss. But this is, your honor, if I may very quickly, and I do want to reserve, very quickly, that's why you need to take a look at See's. In See's, it was plaintiff's motion for summary adjudication to remove the affirmative defense. The court ultimately said, hey, we buy your theory, plaintiff, but the defense has a perfect right to say, to disagree, and say it was neutral over time. That's within our pleadings, your honor. Here, Time Warner... Quote, lawfully used the rounding method if they engaged in a mini actuarial process at the time of payroll, and reconciled the rounding with actual time punches. In other words, that would do it in. No, your honor, I would respectfully disagree. If you take a look at what the court ruled, they did say, plaintiff, we agree with your theory, and it may suffer a loss in effect, especially given this overtime, where you try to erase overtime minutes versus lesser regular time minutes. But there's disputed facts here. Plaintiff, very, very adept, very good defense counsel, just argued, hey, our expert report says that there was a I believe properly, send it back to the trial court. That's what should happen here. Setting aside the class action question, how much money is this case now about, given your two clients you represent in this court? Well, we represent several thousand under the PAGA statute. So if you remove, just to clarify, your honor... I'm talking about the two clients who are here. How much money is it? Mr. Corbin, that was the reason for my first issue, your honor. Mr. Corbin had more than $800 lost. The district court on its own, Sue Esponte just said, I'm not going to consider over 95% of that because of the wall clock. And what about Wayne Golston? He's deceased, your honor. We've informed... Well, but so there's only $800 in this case at the moment? No, your honor, it's not $800 at all. And if I may get up on my soapbox for just one second, this is about much more than $800. This is about the fact that Time Warner is going to get up and argue that in 2015, they cannot capture their time to an accurate effect where they need to round. And that's just, that's not common sense. You need to take a look at the legislative intent under both the Department of Labor and the California legislature. You're telling us that they can capture and be much more accurate about it? Absolutely, your honor. Okay, but DOL hasn't changed its regulation in response to that. Well, the DOL has not, your honor, but you have to please understand that the second cause of action is brought into the California Labor Code, which is admittedly that this Ninth Circuit has said maybe more than 20 times, is more protective. So under the FLSA... But the California has embraced the DOL reg, right? No, your honor. Under the CEAS decision, and again, it's important to note that the CEAS was just flip-flopped. Plaintiff, my client, had received certification, which is of less relevance, but brought a motion for summary of judgment to remove the rounding affirmative defense. So you can't rely on the DOL rounding standard? You can rely on it if it's neutral in design and neutral in effect. Sure, but that's always been the presumption. I mean, CEAS Candy does rely on the DOL rounding standard. And that's where they say, we agree. That's where they say, and it's cited several times in our briefs and our reply, we agree with plaintiff's theory. There's a distinction between the DOL and the California Labor Code, that being the eight hour work time, the eight hour overtime day. And that's where it doesn't work. Under the DOL, you're just dealing with this one time a week, maybe. Under the California Labor Code, there's a requirement that as soon as you work in excess of eight hours in a day, you receive overtime compensation. That's unwaivable. There is no allowance under the state of California for rounding to apply, especially we're here, and I'm sorry I keep hammering it. The offset time is one is worth a lot more than another. I have a question on jurisdiction. We're not here on diversity, then. We're here under the federal question jurisdiction. Is that right? I know, Your Honor. There was an allegation. Time Warner is not a California... It is diversity. We brought a request for a nationwide class as well as a California class. So this will be a CAFA case or not? No, Your Honor. It would be... Well, yes, it would be. Excuse me. Forgive me on that. But it's premature to rule on those issues, I guess. The class action issues? It is premature. What occurred here, and again, I'd like to stress, not too much, because I do wanna reserve some time, that this... I've been in front of the district court a lot. It's a very good judge, but this was just a... It was a cluster of mistakes, Your Honor, that's basically, as you see in the record, the court initially said, rounding is not in your complaint, so I'm not gonna address it. But then our motion for summary judgment, the court said, well, rounding actually is. So we brought a motion for reconsideration. The district court has never considered it. This was just a mess. The court, again, on its sua sponte, just said, I'm cutting $800 worth of time. We do submit Gillings is absolutely proper, but the reason why I wanted to state first is we've got these  that this court sent it back. There's just too many mistakes made by the court at the motion for summary judgment level. And with your permission, I'd like to reserve. Thank you, Your Honor. This was... I'm just looking at... I'm curious about jurisdiction here. This was originally filed in Superior Court, and then removed under CAFA. Yes, sir, Your Honor. And I'm sorry, that's why I was flashing back. It's been several years, so... Well, jurisdiction is very important on this, as you probably know. I understand that. Thank you, counsel. Save the rest of your time. We'll protect it. We'll hear from Time Warner. Thank you, Your Honor. May it please the court, Joseph Osmer for the defendant. Your Honors, this court should affirm the district court's grant of summary judgment because the district court properly applied the law to undisputed facts of record in first determining that there was no evidence that Time Warner Cable's rounding policy systematically undercompensated employees, which is what the case law discusses. A policy is not neutral where it systematically undercompensates employees. On the record before the district court, he was absolutely correct in determining there was no evidence of that, and therefore, the policy was lawful. Second, he was absolutely correct in determining that the mere two instances of Time that plaintiffs were seeking recovery for on their computer clock in... Computer log in claim, excuse me, where they... Wayne Golston, on one occasion, logged into a computer program three minutes before clocking in, contrary to his regular routine, and on one occasion, Plaintiff Corbin logged into a computer program one minute before clocking in, again, contrary to his regular routine. The district court quite correctly concluded that that was de minimis as a matter of law. We saw this business about the wall clock at $800 and all of that stuff. Your Honor, I'm happy to address the $800 issue. First off, that was not a sua sponte decision of the district court. Going all the way back to the class cert briefing, we had pointed out to the district court that their attempts to show loss during the wall clock period didn't work because of Corbin's own testimony that when he would come in, and this is in the record at SCR 51, during the wall clock period, he would swipe in as he entered the premises, as he came into the call center. He then testified unequivocally. He then had five minutes of free time to do whatever he wanted to do, was not expected to be at his desk to commence work for five minutes. He could get water, he could talk to his friends, he could go to the restroom, but these time swipes that they tried to use to show loss did not represent compensable time. That is not a novel issue in these rounding cases. For example, in Alonzo versus Maximus, the Central District of California faced that same issue. In that case, it's 832 F sub second 1122. On page 1128, the judge, in granting summary judgment in Alonzo, in granting summary judgment for the employer, said, to the plaintiffs, you can't raise a question of fact about whether this was true. When your analysis, when you're trying to show loss based on time punches that don't show time worked, they may show that people were on the premises, that they had swiped when they came into the premises, but they don't show actual compensable time. Counsel, the other side gave us the impression that the judge just picked this out of the air and it came out of nowhere. No, sir, not at all. Again, it first came up in class cert briefing, but then at summary judgment, the court started out by discussing his tentative inclination with us on what he intended to grant summary judgment on. He said that he tentatively planned to grant summary judgment on all claims prior to May 4th, 2010, that is during the Walcott period. He asked the parties, he told the parties he wanted to hear from them on his tentative. We argued, I argued, the defendants argued that the judge's grant of summary judgment prior to May 4th, 2010 was entirely proper, and I believe this is at SCR 16 and 17. We argued that it was entirely proper for the reason I just discussed with the Walcocks about it not representing compensable time, and there's case law like Alonzo. Seize Candy also rejected an expert analysis that tried to rely on, just as we have here, time punches that didn't account for a grace period after the time punch where they weren't required to work. We pointed that out at argument. Just as the district court noted in its order, they did not respond to that argument. They didn't respond at argument, and then we had supplemental briefing afterwards where they had a chance to bring any concerns they had about the grant of summary judgment prior to May 4th. They had a chance to bring that to the district court's attention in the supplemental briefing. They failed to do so. Interestingly, in that supplemental brief that they filed, they did bring other issues to the court's attention that were of concern to them. Specifically, they asked the court to take another look at their motion for reconsideration on the denial of class certification. So certainly, they had every opportunity in that supplemental briefing and on their feet at the hearing to argue to the district court what they're arguing to this court. They didn't do it, and the precedence of this court dictate that that's not grounds for reversal when you don't raise it in the district court. I would also point out a couple other things about this $800 issue. If you look at their first amended complaint, which the paragraphs I'm focusing on are ER 401 and 402, I believe. The operative complaint here dozens of times repeats problems they have with Avaya slash Kronos. Throughout, it talks about Avaya slash Kronos. It doesn't reference the Walcott period at all. So their complaint appeared to be attacking the Avaya Kronos system, which didn't start until May 4th of 2010. That also supported the district court's grant of summary judgment. I would also note that with respect to the rounding and evaluating the neutrality of the rounding policy, which is what we're talking about prior to May 4th, there's no requirement that the district court look over the whole period of employment. That's not what the rounding regulation says. The rounding regulation and the case law all discussed looking at it over a period of time to see whether it looks like it's going to average out. And what the district court looked at was a one year period of time, over one year actually, when it had reliable swipes during the Avaya Kronos period. You had over a year, it captured all the different seasons at the call center where you might have flux one way or the other. And the district court, in looking at that analysis, could see that there was nothing to suggest under compensation. Now, the rounding policy didn't change. The rounding policy itself was the same policy during the time period the court looked at as it was prior to May 4th. So it had plenty of data to evaluate the neutrality of the policy. And what that data showed, undisputed facts, whether you look at time or whether you look at compensation, which was what plaintiff's calculations were, it showed nothing to suggest systematic under compensation. For example, looking at time, it was undisputed that plaintiff Corbin had a slight net gain of time, while plaintiff Wayne Golston had a slight net loss. Wayne Golston gained time on 61% of his shifts, Corbin gained time on 58% of his shifts. If you look at compensation, the last six months of Corbin's employment, he gained $22.95 over that six month period. He gained compensation in 10 pay periods during that time, losing in only four. Our briefs discuss other areas where there were long streaks of gains or modest streaks of gains, and then there'd be loss. What do we do with counsel's argument that what they're losing is actually compensation for overtime as opposed to regular time? Well, first off, C's Candy said that there is no analytical difference between rounding under a straight statement from the court and C's Candy. Second off, what we're evaluating here is the neutrality of the policy. They haven't pointed to anything that would make you more likely to lose overtime under this rounding policy than to gain overtime under this rounding policy. For example, they made the... Took the example of somebody who works three or four extra minutes, that time would be rounded away. That's correct. But let's keep in mind that this was a call center, people calling in who are having issues with Time Warner Cable, wanna buy from Time Warner Cable, whatever it may be. There's also phone calls that take people past their shift more than seven minutes, eight minutes past the shift, then they gain seven minutes of overtime because that time rounds to quarter past the hour. Is that paid at overtime rates? I'm sorry, Your Honor? Is that eight minutes you just described, is that paid at overtime rates? Yes, yes. There's no dispute that if the appointees worked overtime with the application of the rounding policy, that they were paid the overtime for that. We treated... The rounding made no distinction between overtime and regular hours. The roundings deals with the minutes, whereas the hourly rate might vary, is that what you're saying? Yes, you would, Your Honor. And if those minutes, if rounding, if they worked eight hours and seven minutes, or excuse me, eight hours and eight minutes, what the rounding system would do is it would give them credit for eight hours and 15 minutes, and all 15 of those extra minutes would be paid at the overtime rate. There's no dispute. Counselor, let me interrupt you for a second. If this were a class action, how many members of the class would there be? Your Honor, when they added an FLSA claim, which was after we got to federal nationwide class, to be honest with you, Your Honor, at one time I knew what that number was. Are you talking about thousands? Yes, Your Honor. Yes, Your Honor, the nationwide class. How do we know the system is neutral if all we're doing is looking at two people, Wayne Golston and Corbin? How do we know that they're not outliers? That certainly isn't a sufficiently mature body of statistics to make any conclusion that the system is neutral. If you look at two out of thousands, is it? Well, Your Honor, two issues on that. First, had a class been certified, there would have been a broader analysis from both sides, I suspect. But right now, it's an individual plaintiff case. They lost the class... Yeah, that's true, but you're asking us to take a look at it and say, well, it's neutral based on two out of thousands. Well, and Your Honor... Maybe if it would have appropriately been certified as a class, we'd be looking at a larger statistical sample, wouldn't we? That would likely be true. But one thing... And so it's possible that the system, if you looked at more than just two people, might turn out to be not neutral. Am I right? Your Honor, no, I would not say that. How do you know that you haven't looked at anybody else? Because first off, the rounding policy on its face, it's undisputed that that's neutral. Could you find in a nationwide class action, might you go someplace to some locale and find that supervisors or managers there are applying the policy in some way that makes it non neutral? You could, but there was no evidence of that here. If it's a class, if it's a class, it was properly certified as a class, we might find that out. We don't know. I know of no poll in the world that says two out of thousands is a sufficient sample from which to draw any viable conclusions. And Your Honor, here, they had the burden to show that the policy was not neutral. This is not an affirmative defense. They tried to call it an affirmative defense in their papers by calling it an exemption to the overtime laws. It's not. Both the FLSA and California Labor Code state what... They list what the exemptions are, where the employer has the burden of proof. Things like outside sales, administrative exemption, executive exemption. This is not an exemption. Rounding is simply a permissible way to calculate compensable time. It's permissible under federal law and California law to the same extent as federal law. That's what Seize Candy says. In any event, we don't have the class action issue in front of us on this appeal. We do not, Your Honor. And with the record in front of the district court, they showed nothing to show that this policy was neutral. What their own calculation showed, again, was periods of gain, periods of loss, exactly what you would expect a neutral policy to look like. I've got a question with respect to this $800. It sort of caught my eye. That's way below $75,000, obviously. So this is not diversity? It's not really brought under CAFA, or is it? Well, they filed this in state court as a class action. So when we removed it under CAFA, we were entitled to look at what the damages would be for the class, which got us well over the $5 million threshold. When they got to federal court, they added an FLSA claim, which would now create subject matter jurisdiction. All right. So at the moment, this is an FSLA jurisdiction-based claim? Yes, Your Honor, because the FLSA claim is... Which involves, at this point, only one surviving plaintiff? Yes, Your Honor. And the... Aren't they asking us to order the district court to rule on the motion to certify a class? That is one of the things that they put in their motion, not to rule on a motion to certify the class, but to make the district court address their motion for reconsideration. The district court already denied class cert. They want this court to order the district court to consider their motion for reconsideration. That motion was obviously mooted by the grant of summary judgment, is our position. Very well. All right. The... Judge Bybee, I would like to address something, a question you asked the plaintiffs, that I think is important here. You asked whether you're supposed to look at whether the policy itself is going to average out over time with respect to the average employee, or do you just look at these plaintiffs and whether they might have happened to lose compensation? Clearly, the answer is the former. You have to look at the policy itself. The reg seems to suggest that when it talks about employees in general. But as a practical matter, any employee under a perfectly neutral rounding system, under a rounding system that functions exactly as the DOL and the California DLSC would contemplate, any employee under a perfectly neutral system can have a loss of compensation, and a loss of net compensation at the end of their employment. But what will determine... Somebody who just systematically shows up for work early is... And that happens with people who take mass transportation, for example. They get to a call center five minutes early. They may choose to clock in rather than hang out in the break room, and if they do that and they don't make that time up someplace else, they could have a loss. But that wouldn't make the policy non-neutral. The policy would be perfectly neutral. It's the employee's own clock-in, clock-out habits that do that. If you're going to say rounding becomes unlawful because of that, then you're outlawing rounding because an employer could always have liability to some subset of employees who do exactly what Your Honor was saying, and then as a practical matter, they can't round. We would submit respectfully you can't construe the rounding regulations that are intended to permit rounding in a manner that would in effect preclude rounding and make it impossible to use. Thank you, Counsel. Your time has expired. Thank you, Justice. Mr. Sullivan, you have some reserve time. I do, Your Honor. It looks like about two and a half minutes. The reason why I asked for five, and I'll take two and a half minutes, I believe not improperly there's a bunch of misrepresentations made here. I'd like to address them very quickly. Judge Trott, I believe you hit on something very important. The court in considering the motion for class certification just said, I'm not going to consider it lawful or unlawful. It's just not there. I'm not going to consider it. So two months later when Time Warner brought their motion for summary judgment, it was on rounding, and the district court magically found that it exists. That itself, that's my first point. That's just somewhat egregious. They first said, and this is set forth very concisely within our record, the motion for class certification was not denied on the merits. It was denied on district court's conclusion that it doesn't exist in our complaint. Another thing, with respect to Mr. Osmer's statement that rounding is not an affirmative defense, if you would take a look in our papers, the Sees case and Gillings both state it's an affirmative defense. Why? It's a new matter. Our pleadings just say loss of overtime compensation. We don't need rounding in here at all. We just say they're working eight hours and six minutes. Counsel, if I could interrupt you for one second. I got the impression from listening to you that the $800 issue just sort of came out of the air. The other side got up and said, oh, no, it was part of the summary judgment motion. The judge made those statements, and you didn't respond in kind. Then you had an opportunity a second time to go back and argue that. You just dropped the ball. Is that what happened? That's not what happened, Your Honor. What we dealt with, again, is some shock, saying that when we got the motion for summary judgment, our issue is- Where does the record show you were in shock? I apologize. That was my opinion. I do remember being in shock, and just to very quickly summarize it, just saying, well, Your Honor, you said that- Did you ever consult with Dr. Sporty to get a report? Couldn't afford him, Your Honor. Couldn't afford him. One big issue, Your Honor. Mr. Osmer will suggest just admitted to a violation under California law of the IWC wage order. And, Judge Vibey, this is where my last point is going to be addressed to your question. But the IWC wage order requires accurate records. Mr. Osmer, I believe twice, talked about reliable swipes. Judge Schrott, after the wall clock issue, Mr. Osmer now just said, well, now they're reliable. That's a violation of the wage order, and that's not an allowance. The reason why the labor code exists and the Department of Labor exists is because they have to clarify what an employer can and cannot do. And they can't just say this is as easy as possible for us. There's requirements to have accurate time records. There's an admission from time warrant that they weren't. But you can have accurate time records and still have a rule that says we're going to accept accurate time records with a little bit of fudge here on the rounding. As long as you have a neutral rounding policy. That's what the DOL reg says. Well, and that's where I've got 26 seconds. You're over time. But it would be unusual, unthinkable, that DOL would advocate anything other than accurate time keeping. Well, two, very two. That would go to a grace period issue, which was not pleasant in a form of defense. And that was something that was disregarded by the court as well. But, Your Honor, if I can refer you to the C's case 210, Calab Fourth at 907. It's in our papers. But very quickly, it says this is a site relying on the DOL rounding standard. Addressing Your Honor's question, we'll conclude that rounding policy is okay if rounding is fair and neutral on its face. And it is used in such a manner that will not result over a period of time in failure to compensate the employees properly for all the time they have actually worked. So, Your Honor, as much as I respectfully disagree with the DOL standard, it cannot be disputed that under the California Labor Code standard, we're more protective. We address the fact that, hey, as much as this, you know, you may come in late, the employer may just as well require you to work early. And that's the reason why plaintiff's attorneys exist here. And I'm sure Your Honors have all seen this. Hey, 15 minutes, I really need this report out. 15 minutes, get it done. I'm not going to pay you. All right. Thank you, counsel. Your time has expired. The case just argued will be submitted for decision, and the court will adjourn. All rise. Hear ye, hear ye. While Christians haven't had business with this honorable, the United States Court of Appeals for the Ninth Circuit will now depart. For this court, for this session, I'll send adjournment.
judges: O'scannlain, Trott, Bybee